# United States District Court

**CENTRAL** _____ **DISTRICT OF** _____ **CALIFORNIA** _____

| | |
|---|---|
| **In the Matter of the Seizure of**<br>(Address or Brief description of property or premises to be seized)<br><br>Up to $116,430 on deposit in Bank of America<br>Business Checking Account No. 325108032435. | **APPLICATION AND AFFIDAVIT**<br>**FOR SEIZURE WARRANT**<br><br>**CASE NUMBER:**  2:21-MJ-03765<br><br>**[UNDER SEAL]** |

**I, Stephanie Lee, being duly sworn depose and say:**

**I am a Special Agent with the Department of Defense, Defense Criminal Investigative Service, and have reason to believe that in the** _____ **CENTRAL** _____ **District of** _____ **CALIFORNIA** _____
**there is now concealed a certain person or property, namely** (describe the person or property to be seized)

Up to $116,430 on deposit in Bank of America Business Checking Account No. 325108032435
**which is** (state one or more bases for seizure under United States Code)

subject to seizure and forfeiture under 18 U.S.C. §§ 981(b)(2), 981(a)(1)(C), 982(b), and 21 U.S.C. § 853(f).

**concerning a violation of Title** 18 **United States Code, Section(s)** 1343 and 1344.

**The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:**

**Continued on the attached sheet and made a part hereof.**      X  Yes __ No

**/s/ S.A. Stephanie Lee** _____
**Attested to by the applicant in accordance with the**
**requirements of Fed. R. Crim. P. 4.1 by telephone**

**Sworn before me in accordance with requirements of**
**Fed. R. Crim. P. 4.1 by telephone**

_____
**Date**

**Los Angeles, California** _____
**City and State**

**Hon. Jacqueline Chooljian, U.S. Magistrate Judge** _____
**Name and Title of Judicial Officer**

_____
**Signature of Judicial Officer**

**AUSA Jonathan Galatzan;drb**

CUI/LEI

## AFFIDAVIT

I, Stephanie Lee, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of an application for warrants to seize:

    a. Up to $116,430 ("SUBJECT FUNDS 1") on deposit in Bank of America business checking account number 325108032435 ("SUBJECT ACCOUNT 1"), held in the name of ZX Global Insurance Solutions, Inc.;

    b. Up to $50,000 ("SUBJECT FUNDS 2") on deposit in JP Morgan Chase business checking account number 709909656 ("SUBJECT ACCOUNT 2"), held in the name Black Owl Group, Inc.;

    c. Up to $40,000 ("SUBJECT FUNDS 3") on deposit in JP Morgan Chase business checking account number 709909672, held in the name Black Owl Group, Inc. ("SUBJECT ACCOUNT 3");(SUBJECT FUNDS 1, SUBJECT FUNDS 2, and SUBJECT FUNDS 3, referred to collectively hereafter as the "SUBJECT FUNDS");

    d. One 2020 Ford F-450 SD VIN 1FT8W4DT0LED33805 with California plate AL56H88 ("SUBJECT VEHICLE 1"); and

    e. One 2020 Ford Expedition VIN 1FMJK1MT8LEA33582 with California plate 8SEE927 ("SUBJECT VEHICLE 2"); (hereinafter referred to collectively as the "SUBJECT VEHICLES").

2. Based on the facts set forth below, there is probable cause to believe that the SUBJECT FUNDS and SUBJECT VEHICLES are subject to seizure pursuant to 18 U.S.C. § 981(b)(2) and

1

forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) (rendering subject to forfeiture any property that constitutes or is derived from proceeds traceable to any violation of 18 U.S.C. §§ 1343 (Wire Fraud), and 1344 (Bank Fraud).

3.    In addition, there is probable cause to believe that the SUBJECT FUNDS and SUBJECT VEHICLES are subject to seizure and forfeiture to the United States pursuant 18 U.S.C. § 982(b) and 21 U.S.C. § 853(f) because the property would, in the event of conviction on the alleged underlying offenses, be subject to forfeiture, and an order under section 21 U.S.C. § 853(f) would not be sufficient to assure the availability of the property for forfeiture.  To the extent that the SUBJECT FUNDS are not the actual monies traceable to or involved in the illegal activities identified herein, the government alleges that the funds are identical property found in the same accounts as the property traceable to or involved in the illegal activities, rendering these funds subject to forfeiture pursuant to Title 18, United States Code, Section 984 (Forfeiture of Fungible Property).

4.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested seizure warrants and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

CUI/LEI

## II. <u>BACKGROUND OF AFFIANT</u>

5.    I am a Special Agent of the Defense Criminal Investigative Service ("DCIS").  I have been employed as a Special Agent with the DCIS since 2012, and I was formerly employed as a Special Agent with the Air Force Office of Special Investigations ("AFOSI") since 2004.  I have a Bachelor's degree in Psychology from the University of California Los Angeles and a Master's Degree in Criminal Justice from Boston University.  I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program, the AFOSI's Special Agent Training Program, and the DCIS' Basic Special Investigations Course.  I have also received specialized training in the investigation of financial crimes and individuals and entities committing frauds against the United States.

6.    I am currently assigned to the DCIS, Long Beach Resident Agency in Long Beach, California.  My current duties include investigating violations of federal statutes committed against the United States.  In the course of my duties, I investigate, and prepare for prosecution, cases against persons and entities involved in frauds against the United States.  I have participated in numerous criminal investigations, including investigations involving schemes to defraud the United States by individuals and entities.  Additionally, during the course of my duties, I have prepared search and arrest warrants and have participated in the execution of search and arrest warrants.

CUI/LEI

7.     Unless stated otherwise, I have personal knowledge of the matters set out in this affidavit.  To the extent that any information in this affidavit is not within my personal knowledge, it was made known to me through my own review of the documents discussed in this affidavit, interviews of witnesses, surveillance, and through reliable law enforcement sources, including discussions with other law enforcement agents, and I believe it to be true.

### III.  SUMMARY OF PROBABLE CAUSE

8.     The Department of Defense ("DOD"), Defense Criminal Investigative Service is conducting an investigation into whether Adil and Lourdes Zekkani and their companies ("ZEKKANI, ET AL."), committed wire fraud, bank fraud, and money laundering in Paycheck Protection Program ("PPP") loan applications and loan forgiveness applications.

9.     As set forth below, there is probable cause to believe that ZEKKANI, ET AL. engaged in a scheme, plan, and artifice to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises in violation of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), and 18 U.S.C. § 1956 (Money Laundering).

10.    ZEKKANI, ET AL. committed wire fraud, bank fraud, and money laundering, by applying for, accepting PPP loan monies and subsequently applying for loan forgiveness for said loans under fraudulent pretenses.  As stated in the facts set forth herein, ZEKKANI, ET AL. represented they had companies that, in fact, employed individuals, paid salaries, and had operating expenses

that were affected by the Covid-19 pandemic.  The investigation disclosed no evidence of any ZEKKANI, ET AL. companies employing any individuals.

11.  Furthermore, in their loan forgiveness applications, ZEKKANI, ET AL. certified that the PPP loan funds received were used to pay employees and to keep their businesses afloat, when, in fact, the PPP loan fraud funds were used to purchase luxury vehicles and for miscellaneous personal expenses.

## IV. STATEMENT OF PROBABLE CAUSE

12.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.  Background**

1.  The Paycheck Protection Program

13.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through the PPP.  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

14.  To obtain a PPP loan, a qualifying business must submit a PPP loan application, signed by an authorized representative of the business.  The PPP loan application

CUI/LEI

requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures are used to calculate the amount of money the small business is eligible to receive under the PPP.  In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

15.  A PPP loan application must be processed by a participating lender.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the Small Business Administration ("SBA") in the course of processing the loan.  If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the SBA.  The SBA is a United States government agency based in Washington, D.C.

16.  PPP loan proceeds must be used by the business on certain permissible expenses, *e.g.*, payroll costs, interest on mortgages, rent, and utilities.  In some instances, the PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

        2.    Relevant Entities and Individuals

    17.   Adil and Lourdes Zekkani.  Adil Zekkani ("Adil") and
Lourdes Zekkani ("Lourdes") are married.  They have owned and
operated at least 22 companies since 2004.

    18.   Aren Investigations, Inc.  Adil registered the
Articles of Incorporation for Aren Investigations, Inc. ("Aren
Investigations") through the California Secretary of State on
approximately April 9, 2014.  A 2017 Statement of Information
describes the business of the corporation as being "private
investigations," lists Adil as the CEO, secretary, CFO and only
director, and lists Black Owl Investigations, Inc. ("Black Owl")
as the agent for service of process.  According to California
Secretary of State filings, Aren Investigations is located in
Los Angeles, California.  Adil opened Capital One Bank account
ending in 3514 ("CAPITAL ONE 3514") in Aren Investigations' name
on approximately November 12, 2015.  Adil had previously opened
two Bank of America bank accounts on behalf of Aren
Investigations in 2014.  Both accounts were "force closed" with
negative balances in 2017.

    19.   ZX Global Insurance Solutions, Inc.  Adil registered
the Articles of Incorporation for ZX Global Insurance Solutions,
Inc. ("ZX Global") through the California Secretary of State on
January 26, 2017.  A 2017 Statement of Information describes the
business of the corporation as being "insurance services" and
lists Adil as the CEO, secretary, CFO and only director.  The
statement of information was updated on approximately January
22, 2021 to replace Adil with Lourdes as the CEO, Secretary,

CUI/LEI

CFO, and sole director.  According to California Secretary of State filings, ZX Global is located in Los Angeles, California. Lourdes opened SUBJECT ACCOUNT 1 in ZX Global's name in 2018.

### B. Adil Applies on Behalf of Aren Investigations for a PPP Loan through Capital One Bank

20.  On approximately June 2, 2020, Adil applied for a $321,200 PPP loan through Capital One Bank on behalf of Aren Investigations (the "Aren Investigations Loan").[1]  He claimed the company had 25 employees.

21.  I know from reviewing the loan file that as part of the loan application, Adil submitted a profit-and-loss statement for February 2019 through February 2020 claiming $2,872,467 in gross sales; $1,238,937 in payroll; and a total of $221,854 in net income.  Aren Investigations' bank records do not show any evidence of any payroll or wages being paid to any employees in 2019 or 2020.

22.  The loan file shows that Adil also submitted IRS Forms 1099 that reported income paid to Aren Investigations in 2019 as follows:

    a.  $299,397 from Group X Security

        i.  Adil is listed as the CEO and sole point of contact for Group X Security in the federal government's System for Award Management ("SAM"), which is a system used for government contracting and procurement.  The SAM lists two Bank

---

[1] Adil had previously applied for a PPP loan on behalf of Aren Investigations on approximately May 4, 2020.  This loan application was rejected, and the loan was not funded.  The underwriter noted an "information mismatch."  In the loan application, Adil claimed that Aren Investigations had 11 employees.

CUI/LEI

of America bank accounts for Group X Security.  Bank of America account records show that the accounts are registered to ZX Global.  They do not show any evidence of payments going to Aren Investigations or CAPITAL ONE 3514.

     b.   $807,324 from Admicrotek, Inc.

       i.   Admicrotek's Statement of Information filed with the California Secretary of State in 2016 lists Adil as the company's CEO, Secretary, CFO, Director, and sole point of contact.  Black Owl Investigations, Inc. is listed as the agent for service of process.

     c.   $407,311 from Black Owl Investigations, Inc.

       i.   Black Owl Investigations' Statement of Information filed with the California Secretary of State in 2020 lists Adil as the company's CEO, Secretary, CFO, Director, and sole point of contact.  Admicrotek, Inc. is listed as the agent for service of process.

     d.   $242,155 from Black Owl 360, Inc.

       i.   Black Owl 360's Statement of Information filed with the California Secretary of State in 2020 lists Adil as the CEO, Secretary, CFO, Director, and sole point of Contact for Black Owl 360.  Black Owl Investigations is listed as the agent for service of process.  ZX Global and Aren Industries' bank account records show transactions related to Black Owl 360. Adil is the authorized signatory on the Aren Industries' account. Lourdes is the authorized signatory on the ZX Global account.

CUI/LEI

23.   In approximately June 2020, a PPP loan for Aren Investigations Loan file number 48448542 in the amount of $321,200 was granted to Adil in his capacity as president of Aren Investigations. This loan was fully funded and booked on approximately June 17, 2020.

24.   On approximately January 22, 2021, Adil applied on behalf of Aren Investigations for a Second Draw PPP Loan, which is a loan for borrowers that previously received a PPP loan.  On this application, Adil again claimed that Aren Investigations had 25 employees, and he submitted the same profit-and-loss statement and IRS Forms 1099 that he submitted with his June 2, 2020 application.  Adil withdrew this loan application the same day he submitted it.

25.   After withdrawing his Second Draw PPP Loan application, Adil started a new application on behalf of Aren Investigations for a PPP loan through Capital One Bank.  He initially wrote in the application that he was requesting a $195,865 loan, but he changed the requested amount numerous times until the requested loan amount reached $336,093.  He again claimed that Aren Investigations had 25 employees, and he uploaded the same profit-and-loss statement and IRS Forms 1099 that he submitted with his June 2, 2020 application.  Although Adil began the application, the application was never submitted.

### C.   Lourdes Applies on Behalf of ZX Global for a PPP loan through Bank of America

26.   On approximately April 20, 2020, Lourdes applied on behalf of ZX Global for a $237,500 PPP loan through Bank of

America (the "ZX Global Loan").  The application stated that Lourdes owned 100% of the company and the company spent $95,000 monthly on payroll for 21 employees.  Lourdes claimed the money was for the "Purpose of loan Payroll," "Purpose of loan Lease/Mortgage interest," and "Purpose of loan Utilities."  At Bank of America's request, Lourdes submitted a PPP Application Addendum stating the "Average Monthly Payroll" for ZX Global was $115,116.

27.  I know from reviewing the ZX Global loan file that on approximately April 26, 2020, Bank of America issued a $237,500 promissory note to ZX Global for PPP loan number 4158887303. Lourdes digitally signed an e-consent as an authorized representative of the borrower on May 2, 2020.

28.  I have reviewed ZX Global's bank records and did not find any evidence of payroll or wages being paid to any employees in 2019 or 2020.

29.  The following documents were included in ZX Global's loan file:

a.  ZX Global profit-and-loss statement from January to December 2019, claiming $2,580,411 in gross sales; $1,181,932 in payroll; and $155,485 in net income.

i.  ZX Global's bank records show that deposits into ZX Global's bank accounts are primarily from the U.S. Government for contracts to Group X Security and Alermatic, Inc. There is no evidence of payments to ZX Global.

b.  IRS Forms 1099 that reported income paid to ZX Global in 2019 as follows:

CUI/LEI

      i.   $38,175 from Alermatic, Inc.

      ii.  $47,945 from Black Owl Investigations

      iii. $121,827 from Admicrotek, Inc.

      iv.  $81,515 from Aren Investigations

      v.   $144,125 from Group X Security, Inc.

      vi.  $341,995 from Black Owl 360, Inc.

      vii. I have reviewed ZX Global's bank account records and they do not show any payments from the aforementioned companies to ZX Global.

c.   An IRS Form 1120, U.S. Corporate Income Tax Return for 2019 for ZX Global claiming gross receipts or sales of $2,580,411; salaries and wages of $1,181,932; and taxable income of $155,485.

d.   An IRS Form 941 for 2020 (1st quarter): "Employer's Quarterly Federal Tax Return" for ZX Global claiming 25 employees, and wages, tips, and other compensation of $161,325.

e.   An IRS Form W-3 for 2019 for ZX Global claiming 25 W-2s and $1,181,932 in wages, tips, and other compensation.

f.   I have reviewed ZX Global's bank account records, and they do not demonstrate gross receipts or sales of $1,905,908 for 2020 or $2,580,411 for 2019 for ZX Global.[2]  They also do not show any salaries or wages for 2019 or 2020.

---

[2] The accounts contain some deposits that appear to be from work performed on government contracts, but the money was not being paid to ZX Global.  Rather, they were made to other companies that were owned and/or managed by Adil.

CUI/LEI

30.   In addition to falsely claiming payroll expenses, the application also appears to contain the following false representations:

a.   "[T]he Applicant or any owner of the business" is not "an owner of any other business" and does not "have common management with, any other business[.]"

i.   Open source research identifies Lourdes Zekkani as the "Principal" of Admicrotek, Inc. and Black Owl Security, Inc.

ii.   In a letter dated October 26, 2020, an attorney for Group X Security advised the Department of the Navy that Lourdes was the majority owner of Group X Security and that Adil was a minority owner with a 30% share.

iii. Open source research identifies Adil as the CEO and CFO of ZX Global from April 7, 2017 – January 22, 2021; Admicrotek, Inc.; Aren Group, Inc.; Aren Industries, Inc.; Aren Investigations; Aren Protection Services, Inc.; Aren Security, Inc.; Black Owl 360, Inc.; Black Owl Investigations, Inc.; Black Owl Security, Inc.; Group X Investigations, Inc.; Group X Security; Installation One, Inc.; International Security Agency, Inc.; North American Investigations; Security Cameras Guide, Inc.; Tech CCTV, Inc.; and Violeta, Inc.

b.   The United States is "the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above[.]"

i.   ZX Global submitted a loan forgiveness application to Bank of America on December 7, 2020 and included

CUI/LEI

six "payroll service provider reports" from pay period ending
July 17, 2020 to pay period ending September 25, 2020.  The
payroll reports were from "Black Owl Group, Professional Payroll
Processing."  The reports listed 25 individuals by first and
last name.  Open source research on the 25 names revealed the
following: 15 of the names could not be associated with anyone
in the United States; one was the name of a deceased relative of
Lourdes; one was an individual in Florida with no known
affiliation with the Zekkanis; three were not able to be
positively identified due to the commonality of the names; and
five had very limited information available due to perhaps only
being in the United States for a short period of time.  Bank
account reviews did not reveal any wages or payroll paid to any
of the individuals or to Black Owl Group.

       c.   "All SBA loan proceeds will be used only for
business-related purposes as specified in the loan application
and consistent with the Paycheck Protection Program Rule."

       i.   As discussed in greater detail below, bank
account records show that two days after a PPP loan for $237,500
was deposited into ZX Global's account (SUBJECT ACCOUNT 1), a
portion of the funds were used to purchase a 2020 Ford F450-SD
truck.

       d.   "The Applicant was in operation on February 15,
2020, and had employees for whom it paid salaries and payroll
taxes or paid independent contractors, as reported on Form(s)
1099-MISC."

CUI/LEI

       i.   A review of bank records does not reveal any wages or payroll paid by ZX Global prior to or after February 15, 2020.

31. Lourdes made several certifications on the PPP loan application, including the following:

       a.   "I [] certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material aspects.  I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law . . . ."

       b.   "By clicking 'Yes' [to apply your electronic signature to this application], you [] certify that the information provided in this application is true and accurate, and acknowledge that any false statements are punishable under the law."

       c.   "The funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

       d.   "The Applicant is not engaged in any activity that is illegal under federal, state, or local law."

       e.   "I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered

utilities and not more than 25% of the forgiven amount may be for non-payroll costs."

**D.   Disbursement of the PPP Loan Funds and Transfer to Intermediate Accounts Controlled by the Zekkanis**

32.   Based on my review of bank records, Adil and Lourdes controlled two bank accounts that were primarily used as conduits to funnel the PPP loan funds to other bank accounts both Adil and Lourdes controlled.  I know that on May 4, 2020, $237,500 in PPP loan funds were deposited into the ZX Global Insurance Solutions account ending 2435 (SUBJECT ACCOUNT 1), and on June 19, 2020, $321,200 in PPP loan funds were deposited into the CAPITAL ONE 3514 account for Aren Investigations, Inc.

33.   Between June 29, 2020 and August 5, 2020, in five separate transfers, the entire $321,200 plus accrued interest in CAPITAL ONE 3514 was transferred to SUBJECT ACCOUNT 1, resulting in a total of $558,747 in ZX Global and Aren Investigation fraudulent PPP loan funds ultimately deposited in SUBJECT ACCOUNT 1.  The fraudulent PPP loan funds in SUBJECT ACCOUNT 1 were then used to fund the down payments for two vehicle purchases (the SUBJECT VEHICLES), and to fund transfers to two Bank of America accounts controlled by Lourdes.  Review of bank records shows that traceable proceeds in one of these two Bank of America accounts were used to pay for credit card purchases, the monthly car loan payments for the SUBJECT VEHICLES, and to fund transfers to two new JP Morgan Chase bank accounts controlled by Adil (SUBJECT ACCOUNTS 2 AND 3).

**Aren Investigations, Inc.**

CUI/LEI

**Capital One Bank account ending 3514**

34.  Bank records show that the CAPITAL ONE 3514 business savings account was opened on or about November 12, 2015, with Adil as sole signatory.

35.  There was no activity in CAPITAL ONE 3514 from 2019 to approximately June 2020, and it had a balance of $.05 for each quarterly statement up until the $321,200 in PPP loan funds were deposited on June 19, 2020.

36.  From approximately June 2020 to August 2020, aside from nominal interest payments by the bank, the only activity in CAPITAL ONE 3514 were five transfers totaling $321,247 to SUBJECT ACCOUNT 1.  From August 31, 2020 to December 31, 2020, there was no activity in the account.  As of December 31, 2020, the ending balance in CAPITAL ONE 3514 was $1.10.

**ZX Global Insurance Solutions, Inc.**

**Bank of America account ending 2435 ("SUBJECT ACCOUNT 1")**

37.  Bank records show that SUBJECT ACCOUNT 1 was opened in 2018, with Lourdes as the sole signatory.  She is also listed as the account owner and Chief Financial Officer for the company. The ending balance in SUBJECT ACCOUNT 1 on April 30, 2020, was $4,805.58.

38.  As discussed above, between May 1, 2020 and June 30, 2021, $558,747 in PPP Loan Funds was deposited into SUBJECT ACCOUNT 1.

39.  Between May 1, 2020 and June 30, 2021, $372,317 was transferred from SUBJECT ACCOUNT 1 to two other Bank of America

accounts Lourdes controlled, as well as $70,000 in down payments for the purchase of the SUBJECT VEHICLES.

40.   Taking into account the deposits of PPP loan fraud proceeds deposited into SUBJECT ACCOUNT 1 ($558,700 plus $47 interest) and the debits of $372,317 (the funds transferred to the Bank of America accounts controlled by Lourdes) and the down payments for the SUBJECT VEHICLES, there remains a total of $116,430 of PPP loan fraud funds available in SUBJECT ACCOUNT 1.

### Use of Intermediary ZX Global Insurance Solutions Inc.
### Bank of America accounts 2448 and 2422

41.   A review of bank records shows Lourdes was the sole signatory of two additional Bank of America ZX Global Insurance Solutions, Inc. accounts that were opened March 31, 2018.  These accounts received funds from SUBJECT ACCOUNT 1, and activity on the accounts show these funds paid for, among other things, Ford Motor Credit vehicle payments, credit card bills, medical and life insurance, storage facility fees, rent, a payment for what appears to be for funeral services, and two transfers totaling $90,000 to SUBJECT ACCOUNTS 2 AND 3 (described below).

42.   A review of bank records shows that Bank of America accounts ending 2448 ("BOA 2448") and 2422 ("BOA 2422") are held in the name ZX Global Insurance Solutions, Inc. and that the accounts received approximately $372,317 from May 1, 2020 to June 30, 2021, in PPP loan fraud proceeds from SUBJECT ACCOUNT 1 ($364,217 to BOA 2448 and $8,200 to BOA 2422).  During this same period, BOA 2448 only received monthly deposits from SUBJECT

ACCOUNT 1, whereas BOA 2422 also received other deposits in minimal amounts.

43.   A review of bank records for BOA 2448 shows that from May 1, 2020 to June 18, 2021, this account was primarily used as a conduit to funnel $364,217 in PPP loan fraud proceeds.  The total deposits for BOA 2448 were $367,369 and withdrawals were $364,639, with a remaining balance of $2,730.

### Use of Intermediate Black Owl Group, Inc.

### JP Morgan Chase account 9656

44.   A review of JP Morgan Chase bank records show that Adil Zekkani is listed as the sole signatory of SUBJECT ACCOUNT 2. This account was opened March 19, 2021.

45.    On May 3, 2021, there was a wire transfer of $50,000 in PPP loan fraud proceeds from BOA 2448 to SUBJECT ACCOUNT 2. Aside from the opening deposit of $250, there were minimal deposits and withdrawals in SUBJECT ACCOUNT 2.

### Use of Intermediary Black Owl Group, Inc.

### JP Morgan Chase account 9672

46.   A review of JP Morgan Chase bank records show that Adil Zekkani is listed as the sole signatory of SUBJECT ACCOUNT 3. This account was opened March 19, 2021.

47.   On May 3, 2021, there was a wire transfer of $40,000 in PPP loan fraud proceeds from BOA 2448 to SUBJECT ACCOUNT 3. Aside from the opening deposit of $250, there were minimal deposits and withdrawals in SUBJECT ACCOUNT 3.

### Purchase of Vehicles with Traceable Funds

CUI/LEI

48.   As discussed above at Paragraphs #30 and #31, from May 4, 2020 and June 19, 2020, $558,747 in PPP loan fraud proceeds were deposited into SUBJECT ACCOUNT 1.

49.   In the months of May and June 2020, PPP loan fraud proceeds in SUBJECT ACCOUNT 1 were used to purchase SUBJECT VEHICLE 1 and SUBJECT VEHICLE 2, both of which are titled in the business name Black Owl Inc.

50.   A review of bank records shows that on May 6, 2020, two days after the $237,000 ZX GLOBAL PPP LOAN funds were deposited into SUBJECT ACCOUNT 1, $35,000 was wired out of this account to a Comerica Bank account belonging to David W Wilson Villa Ford, a car dealership, Orange, California.  I know from reviewing documents from the Ford dealership that the wire transfer was for the purchase of SUBJECT VEHICLE 1 on behalf of Black Owl 360.  The total purchase price of the car was approximately $128,852.60.  Adil signed the purchase paperwork as the owner of Black Owl 360.

a.   The balance of the truck's purchase price was financed through Ford Motor Credit Company.  Payments to Ford Motor Credit are made monthly from BOA 2448, which is primarily funded by SUBJECT ACCOUNT 1.  The only other source of funds in BOA 2448 appears to be nominal mobile deposits.

51.   A review of bank records shows that on June 30, 2020, four days after $97,750 of the $321,200 AREN INVESTIGATIONS PPP LOAN funds were deposited into SUBJECT ACCOUNT 1 from Capital One Bank, $35,000 was wired out of this account to a Comerica Bank account belonging to David W Wilson Villa Ford, a car

CUI/LEI

dealership, Orange, California.  I know from reviewing documents from the Ford dealership that the wire transfer was for the purchase of SUBJECT VEHICLE 2 on behalf of Black Owl 360.  The total purchase price of the car was approximately $116,072.60. Adil signed the purchase paperwork as the owner of Black Owl 360.  The balance of the SUBJECT VEHICLE 2's purchase price was financed through Ford Motor Credit Company.  Payments to Ford Motor Credit are made monthly from BOA 2448, as described below.

**Monthly Vehicle Payments**

52.  Beginning June 17, 2020 through June 18, 2021, $31,958 in PPP loan fraud proceeds from BOA 2448 were used to pay the monthly payments to Ford Motor Credit for the SUBJECT VEHICLES as discussed above.

**Lourdes Applies for Loan Forgiveness for the ZX Global Loan**

53.  On approximately December 7, 2020, Lourdes submitted a PPP loan forgiveness application on behalf of ZX Global for the $237,500 loan disbursed on May 4, 2020 to SUBJECT ACCOUNT 1. Lourdes claimed to have 25 employees when she applied for the loan and when she applied for loan forgiveness.  She claimed $313,384.68 in payroll costs from May 4, 2020 to October 18, 2020, and she requested forgiveness for the entire loan.

54.  In the loan forgiveness application, Lourdes checked the following statements:

a.    "I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges."

  b. "The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness."

  c. "The information provided in this application and the information provided in all supporting documentations and forms is true and correct in all material respects.  I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law…"

  d. "The tax documents I have submitted to Bank of America N.A. are consistent with those the Borrower has submitted to the IRS and/or state tax and workforce agency…"

55. The documents Lourdes submitted to support the loan forgiveness application were payroll processing documents from Black Owl Group and 2020 tax filings for ZX Global:

  a. An IRS Form 941 for 2020 (2nd quarter): "Employer's Quarterly Federal Tax Return" for ZX Global claiming 25 employees and $277,419 in wages, tips, and other compensation.

  b. An IRS Form 941 for 2020 (3rd quarter): "Employer's Quarterly Federal Tax Return" for ZX Global claiming 25 employees and $231,295 in wages, tips, and other compensation.

56. An IRS Form 941 for 2020 (4th quarter): "Employer's Quarterly Federal Tax Return" for ZX Global claiming 25 employees and $313,384 in wages, tips, and other compensation. As discussed above, the payroll reports submitted listed 25

individuals by first and last name.  I could not confirm through open source research that any of these individuals worked for ZX Global.  Moreover, reviews of ZX Global's bank account records did not reveal any wages or payroll paid to any of the individuals listed or to Black Owl Group.

57.  ZX Global's bank account records also do not support the gross receipts claimed in the tax documents submitted.

58.  According to BOA, ZX Global's application for loan forgiveness was approved on January 4, 2021.

59.  On January 20, 2021, ZX Global applied for a second draw PPP loan.  This application was denied due to ZX Global being on the "Excluded Party" list.

60.  The following documents were included in ZX Global's application for a second draw PPP loan:

      a.  The IRS Form 1120, U.S. Corporate Income Tax Return for 2019 previously mentioned, wherein ZX Global claimed gross receipts or sales of $2,580,411; salaries and wages of $1,181,932; and taxable income of $155,485.

      b.  An IRS Form 1120, U.S. Corporate Income Tax Return for 2020 for ZX Global claiming gross receipts or sales of $1,905,908; salaries and wages of $1,181,941; and taxable income of -$169,878.

### V.  CONCLUSION

61.  Based on the facts set forth above, there is probable cause to believe that the SUBJECT FUNDS and SUBJECT VEHICLES are subject to seizure pursuant to 18 U.S.C. § 981(b)(2) and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) (rendering

CUI/LEI

subject to forfeiture any property that constitutes or is derived from proceeds traceable to any violation of 18 U.S.C. §§ 1343 (Wire Fraud) or 1344 (Bank Fraud). In addition, there is probable cause to believe that the SUBJECT FUNDS and SUBJECT VEHICLES are subject to seizure and forfeiture to the United States pursuant 18 U.S.C. § 982(b) and 21 U.S.C. § 853(f) because the funds would, in the event of conviction on the alleged underlying offenses, be subject to forfeiture, and an order under section 21 U.S.C. § 853(f) would not be sufficient to assure the availability of the property for forfeiture.  To the extent that the SUBJECT FUNDS are not the actual monies traceable to or involved in the illegal activities identified herein, the government alleges that the funds are identical property found in the same accounts as the property traceable to or involved in the illegal activities, rendering these funds subject to forfeiture pursuant to Title 18, United States Code, Section 984 (Forfeiture of Fungible Property).

_____
Stephanie Lee, Special Agent
Defense Criminal Investigative
Service

Subscribed to and sworn before me
this _____ day of MONTH, YEAR.


_____
THE HONORABLE [NAME]
UNITED STATES MAGISTRATE JUDGE